# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUUL LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MOHAMMED OLABI; HIGH RIDGE FUEL AND MART LLC; WILTON GAS LLC; STRATFORD GAS & MART, INC.; STAMFORD PETROLEUM AND MART, LLC; and WOODBRIDGE GAS, LLC, <br><br> Defendants. | Civil Action No. |

## PLAINTIFF'S COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION

Plaintiff JUUL LABS, INC. ("JLI"), by and through its undersigned attorneys, files this Complaint against defendants MOHAMMED OLABI, an individual; HIGH RIDGE FUEL AND MART LLC, a Connecticut limited liability company, WILTON GAS LLC, a Connecticut limited liability company, STRATFORD GAS & MART INC., a Connecticut corporation, STAMFORD PETROLEUM AND MART, LLC, a Connecticut limited liability company, and WOODBRIDGE GAS, LLC, a Connecticut limited liability company (collectively, the "Defendants"), and hereby alleges as follows:

## PARTIES

1. Plaintiff JUUL Labs, Inc. ("JLI") is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 560 20th Street, San Francisco, California 94107. JUUL conducts business within this judicial district.

2. Defendant Mohammed Olabi is an individual who, on information and belief, resides at 524 Pope's Island Road, Milford, CT 06460 in this judicial district. Defendant Mohammed Olabi is a member of Defendants High Ridge Fuel and Mart LLC, Wilton Gas

-1-

LLC, Stamford Petroleum and Mart, LLC, and Woodbridge Gas, LLC, an officer of Defendant Stratford Gas & Mart, Inc., and participates directly in the management and operation of the Defendant businesses.

3. Defendant High Ridge Fuel and Mart LLC is a limited liability company organized and existing under the laws of the State of Connecticut and having its principal place of business at 920 High Ridge Road, Stamford, Connecticut 06905. Defendant High Ridge Fuel and Mart LLC owns and operates the High Ridge Mobil gas station at that same location.

4. Defendant Wilton Gas LLC is a limited liability company organized and existing under the laws of the State of Connecticut and having its principal place of business at 932 Danbury Road, Wilton, Connecticut 06897. Defendant Wilton Gas LLC owns and operates the Mobil gas station at that same location.

5. Defendant Stratford Gas & Mart, Inc. is a corporation organized and existing under the laws of the State of Connecticut and having its principal place of business at 2820 Main Street, Stratford, Connecticut 06497. Defendant Stratford Gas & Mart, Inc. owns and operates the Stratford Gas Exxon gas station at that same location.

6. Defendant Stamford Petroleum and Mart, LLC is a limited liability company organized and existing under the laws of the State of Connecticut and having its principal place of business at 765 E. Main Street, Stamford, Connecticut 06902. Defendant Stamford Petroleum and Mart, LLC owns and operates the Clarks Hill Global gas station at that same location.

7. Defendant Woodbridge Gas, LLC is a limited liability company organized and existing under the laws of the State of Connecticut and having its principal place of business at 1655 Litchfield Turnpike, Woodbridge, Connecticut 06525. Defendant Woodbridge Gas, LLC owns and operates the Woodbridge Phillips 66 gas station at that same location.

## NATURE OF THE ACTION

8. JLI is the creator, manufacturer, and distributor of JUUL-branded electronic nicotine delivery systems ("ENDS") and other related products (collectively, "JUUL Products").

9. The JUUL Products have become targets for individuals and entities who wish to take a "free ride" on the commercial success of the JUUL brand that JLI has spent considerable effort and resources to build.

10. Specifically, wrongdoers have counterfeited JUUL products by illegally manufacturing, selling, and distributing fake, copied, and non-genuine versions of JUUL Products and related packaging bearing JUUL trademarks.

11. Through this action, JLI combats the sale and distribution of these unlawful counterfeit products.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338(a), and 1338(b) because (i) claims herein arise out of federal trademark laws as codified in 15 U.S.C. §1114 and 15 U.S.C. §1125(a) (i.e. trademark infringement, false designation of origin, and unfair competition); and (ii) the unfair business practices claim herein is brought with and is related to the substantial claims based on trademark laws. This Court also has supplemental jurisdiction over JLI's claims arising under common law or state law pursuant to 28 U.S.C. §1367(a) because the claims are so related to JLI's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Correspondingly, joinder of all Defendants in one civil action is warranted.

13. This Court has general personal jurisdiction over Defendants due to Defendants' residence and business activities in this judicial district. This Court has specific personal jurisdiction over Defendants due to the nature and quality of Defendants' actions toward the state in which this Court is located. The claims asserted herein arise out of and relate to such actions and this Court's exercise of specific personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

14. Venue in this judicial district is proper for these claims pursuant to 28 U.S.C. §1391(b). As described herein, Defendants reside in this judicial district, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Defendants

have extensive contacts with this judicial district relating to JLI's claims. Defendants conduct regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of JLI.

## FACTUAL ALLEGATIONS

### JUUL Trademarks and Products

15. JLI is the exclusive owner of federally-registered, registration-pending, and common law trademarks. For example, JLI owns the following United States Trademark Registrations:

| Depiction of Trademark | Registration No. and Date | (1) First Use (2) In Commerce |
|---|---|---|
| JUUL® | 4,818,664 (09-22-2015) | (1) 06-01-2015 (2) 06-01-2015 |
| JUUL® | 4,898,257 (02-09-2016) | (1) 06-01-2015 (2) 06-01-2015 |
| JUULpods® | 5,918,490 (11-26-2019) | (1) 06-30-2015 (2) 06-30-2015 |

16. True and correct copies of the Registration Certificates for the above-listed trademarks are attached hereto as Exhibit A. Hereinafter, JLI may sometimes utilize the phrase "JLI's Marks" to refer to, collectively, JLI's federally-registered, registration pending, and common law trademarks.

17. JUUL creates, manufactures, distributes, markets, and sells JUUL Products, including the JUUL system comprised of: (i) a device containing a rechargeable battery, control circuitry and a receptacle for a cartridge or pod, (ii) a disposable cartridge or pod ("JUULpod") that can be inserted into the device, has a heating chamber and is prefilled with a proprietary nicotine e-liquid formulation, and (iii) a charger for charging the device, and related accessories.

18. JLI's Marks appear clearly on JUUL Products, as well as the packaging shown in attached Exhibit B, and in advertisements related to such products.

19. JLI's Marks, as well as the goodwill arising from such trademarks, have never been abandoned.

20. JLI continues to preserve and maintain its rights with respect to JLI's Marks, including those registered with the United States Patent and Trademark Office.

21. Due in large part to the substantial commercial success of the JUUL Products, the JUUL brand is well known to consumers and has garnered extensive coverage by the media.

22. Through the extensive use of the JUUL marks, JLI has spent substantial time, money, and effort in developing consumer recognition and awareness of its brand. JLI markets JUUL Products nationwide, including through its website, and sells its products nationwide, including Connecticut, to current adult smokers through its website and through its nationwide authorized network. JLI also markets and sells its products internationally. JLI has built up and developed significant customer goodwill in its entire product line and JUUL Products are immediately identified by the JUUL Marks.

**Sales of Counterfeit Goods and Grey Market Goods**

23. Beginning on a date that is currently unknown to JLI, Defendants, without the consent of JLI, have offered to sell and sold goods that were neither made by JLI nor by a manufacturer authorized by JLI, all by using reproductions, counterfeits, copies and/or colorable imitations of JUUL Products and JLI's Marks ("Counterfeit Goods").

24. JLI has not authorized any third party, including Defendant, to make or sell ENDS or other types of products in connection with the JUUL Marks. The Counterfeit Goods sold by Defendant are, therefore, not manufactured in accordance with JLI's own stringent quality controls but are instead manufactured outside of JLI's knowledge and control, using unknown substances and materials, in unknown locations and with unknown manufacturing requirements/controls.

25. The Counterfeit Goods sold by Defendants bear counterfeit and confusingly similar imitations of JLI's Marks in a manner likely to be confused with genuine JUUL Products.

26. Beginning on a date that is currently unknown to JLI, Defendants, without the consent of JLI and within the United States, have offered to sell and sold JUUL Products which, as stated on the packaging of the products themselves, are only authorized for sale in particular countries outside the United States ("Grey Market Goods"). Because the Grey Market Goods are

labeled and packaged to comply with the regulations of the authorized foreign marketplaces, the labeling and packaging of the Grey Market Goods are not in compliance with the regulations of the U.S. Food and Drug Administration.

27. On June 22, 2019, a representative of JLI made an in-person purchase of a Grey Market Good for sale at the High Ridge Mobil gas station retail business owned and operated by Defendant High Ridge Fuel and Mart LLC located at 920 High Ridge Road, Stamford, Connecticut 06905 (the "High Ridge Mobil Business"). True and correct images of the product purchased on June 22, 2019 are attached hereto as Exhibit C. JLI subsequently inspected the product purchased on June 22, 2019 and confirmed that the purchased product is in fact a diverted grey market product.

28. On June 22, 2019, a representative of JLI made an in-person purchase of a Grey Market Good for sale at the Mobil gas station retail business owned and operated by Defendant Wilton Gas, LLC located at 932 Danbury Road, Wilton, Connecticut 06897 (the "Mobil Global Business"). True and correct images of the product purchased on June 22, 2019 are attached hereto as Exhibit D. JLI subsequently inspected the product purchased on June 22, 2019 and confirmed that the purchased product is in fact a diverted grey market product.

29. On August 4, 2019, a representative of JLI made an in-person purchase of a Counterfeit Good for sale at the Stratford Exxon gas station retail business owned and operated by Defendant Stratford Gas & Mart, Inc. located at 2820 Main Street, Stratford, Connecticut 06615 (the "Stratford Exxon Business"). True and correct images of the product purchased on August 4, 2019 are attached hereto as Exhibit E. JLI subsequently inspected the product purchased on August 4, 2019 and confirmed that the purchased product is in fact counterfeit.

30. On August 4, 2019, a representative of JLI made an in-person purchase of a Grey Market Good for sale at the Clarks Hill Global gas station retail business owned and operated by Defendant Stamford Petroleum and Mart, LLC located at 765 E. Main Street, Stamford, Connecticut 06902 (the "Clarks Hill Global Business"). True and correct images of the product purchased on August 4, 2019 are attached hereto as Exhibit F. JLI subsequently inspected the product purchased on August 4, 2019 and confirmed that the purchased product is in fact a diverted grey market product.

31.     On August 4, 2019, a representative of JLI made an in-person purchase of a Counterfeit Good for sale at the Phillips 66 gas station retail business owned and operated by Defendant Woodbridge Gas, LLC located at 1655 Litchfield Turnpike, Woodbridge, Connecticut 06525 (the "Woodbridge Phillips 66 Business"). True and correct images of the product purchased on August 4, 2019 are attached hereto as Exhibit G. JLI subsequently inspected the product purchased on August 4, 2019 and confirmed that the purchased product is in fact counterfeit.

**Cease-and-Desist Correspondence to Defendants**

32.     JLI's counsel mailed cease-and-desist correspondence to Defendants on the following dates: July 5, 2019, July 12, 2019, July 23, 2019, and September 16, 2019. True and correct copies of the correspondence are attached hereto as Exhibit H. The cease-and-desist correspondence provided specific notice of the following, among other items: (i) JLI's confirmation that goods sold by Defendants are in fact counterfeit and non-genuine grey market goods; (ii) JLI's demand that Defendants cease the sale, manufacture, advertisement, and importation of Counterfeit Goods, Grey Market Goods, and all other unauthorized use of JLI's intellectual property; (iii) JLI's ownership of JLI's Marks; (iv) the statutory prohibition of the sale of Counterfeit Goods, Grey Market Goods, and all other unauthorized use of JLI's intellectual property, and JLI's right to seek monetary judgments against infringers; and (v) Defendants' willful infringement under federal law would be established by any further sales of Counterfeit Goods, Grey Market Goods, or any other unauthorized use of JLI's intellectual property.

33.     The cease-and-desist correspondence requested that Defendants contact JLI's counsel to discuss pre-litigation resolution of the legal issues arising from the sale of the Counterfeit Goods, Grey Market Goods, and all other unauthorized use of JLI's intellectual property. Defendants contacted JLI's counsel and received a proposed settlement agreement, but Defendants did not enter into and did not perform the agreement.

**Continued Sales (Counterfeit Goods)**

34.     On August 19, 2019, a representative of JLI made an in-person purchase of a

Counterfeit Good for sale at the High Ridge Mobil Business. True and correct images of the product purchased on August 19, 2019 are attached hereto as Exhibit I. JLI subsequently inspected the product purchased on August 19, 2019 and confirmed that the purchased product is in fact counterfeit.

35. On August 19, 2019, a representative of JLI made an in-person purchase of a Counterfeit Good for sale at the Mobil Global Business in Wilton. True and correct images of the product purchased on August 19, 2019 are attached hereto as Exhibit J. JLI subsequently inspected the product purchased on August 19, 2019 and confirmed that the purchased product is in fact counterfeit.

36. On November 3, 2019, a representative of JLI made an in-person purchase of a Counterfeit Good for sale at the Stratford Exxon Business. True and correct images of the product purchased on November 3, 2019 are attached hereto as Exhibit K. JLI subsequently inspected the product purchased on November 3, 2019 and confirmed that the purchased product is in fact counterfeit.

37. Defendants are not authorized and never have been authorized by JLI to produce, manufacture, distribute, markets, offer for sale, and/or sell merchandise bearing the JUUL Marks, or any variations thereof. JLI has no control over the nature, quality, or pricing of Defendant's products or marketing, or any other aspect of the business conduct of Defendants.

38. Defendants use words, symbols, images, designs, and names confusingly similar or identical to the JUUL Marks to confuse consumers and aid in the promotion and sales of the Counterfeit Goods.

39. Defendants' counterfeit sales outlined above are likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the products are authorized by JLI. Purchasers and prospective purchasers using or simply viewing Defendants' Counterfeit Goods and who perceive a defect, lack of quality, or any other irregularity are likely to mistakenly attribute the issue to JLI, to the detriment of JLI's business and the JUUL brand.

40. The likelihood of confusion, mistake, and deception brought about by Defendants' misappropriation of the JUUL Marks is causing irreparable harm to the goodwill symbolized by the JUUL Marks and the reputation for quality that said marks embody.

41. Defendants' unauthorized use of the JUUL Marks began after JLI legally established the existence and significant value of such trademarks, including after JLI's adoption and use of the JUUL Marks and after JLI obtained two of the trademark registrations described above.

42. Defendants' infusion of the Counterfeit Goods into the marketplace reflects adversely on JLI, results in economic loss to JLI including loss of sales of genuine JUUL Products, damages the goodwill of the JUUL brand, and thwarts JLI's honest efforts and considerable expenditures to promote its genuine JUUL Products using the JUUL Marks.

## COUNT 1

### Trademark Infringement – Counterfeit Goods (15 U.S.C. §1114)

43. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 42 as though set forth fully herein.

44. Defendants' actions to sell and distribute the Counterfeit Goods which utilize spurious designations that are identical to or substantially indistinguishable from the JUUL Marks are intended to cause, have caused, and are likely to continue to cause public confusion or mistake or to deceive consumers, the public, and the trade into believing that the Counterfeit Goods are genuine or authorized JUUL Products.

45. Defendants' actions to sell and distribute the Counterfeit Goods therefore constitute trademark infringement in violation of 15 U.S.C. §1114.

46. JLI has been damaged as a result of Defendants' infringement of JUUL Marks. On information and belief Defendant's sale and distribution of the Counterfeit Goods have resulted in lost sales to JLI, have reduced the business and profits of JLI, and have injured the general reputation and goodwill of JLI, all to JLI's damage in an amount not yet ascertainable, but will be determined during this Civil Action or considered in relation to a request for statutory damages.

47. On information and belief, Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an

amount to be determined during this Civil Action or to be considered in relation to a request for statutory damages.

48. On information and belief, Defendants acted intentionally and/or willfully in infringing upon JUUL Marks through sale and distribution of the Counterfeit Goods, knowing that JUUL Marks belonged to JLI, that the Counterfeit Goods were in fact infringing, and that Defendants were not authorized to infringe upon JLI's Marks through sale and distribution of the Counterfeit Goods.

49. Defendants' spurious designation of Defendants' products constitute the use by Defendants of at least one "counterfeit mark" as defined in 15 U.S.C. §1116(d)(1)(B). Therefore, JLI is entitled to recovery of treble damages and to an award of reasonable attorneys' fees pursuant to 15 U.S.C. §§1117(a) and 1117(b).

50. Because Defendants' actions constitute the use by Defendants of at least one "counterfeit mark" as defined in 15 U.S.C. §1116(d)(1)(B), JLI reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. §1117(c)(1) or (2). On information and belief, Defendants have knowingly and willfully engaged in the acts complained of with oppression, fraud, malice, and in conscious disregard of the rights of JLI. JLI is, therefore, entitled to the maximum statutory damages allowable.

51. The acts of trademark infringement committed by Defendants have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. On information and belief, Defendants' actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public as to the source, sponsorship, and/or affiliation of Defendants and/or the Counterfeit Goods.

## COUNT 2
### False Designation of Origin – Counterfeit Goods (15 U.S.C. §1125(a))

52. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 51 as though set forth fully herein.

53. Defendants' unauthorized use of JUUL Marks, brand names, and the other distinctive words, symbols, slogans, color schemes, images, and designs through which Defendants present the Counterfeit Goods to the market constitutes a wrongful and false representation to the consuming public that the Counterfeit Goods sold by Defendants originated from JLI or somehow are authorized by or affiliated with JLI.

54. Defendants' actions as described herein constitute violation of 15 U.S.C. §1125(a)(1)(A), as such actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with JLI and/or as to the origin, sponsorship, and/or approval of the Counterfeit Goods by JLI. These acts amount to false designations of origin.

55. JLI has been damaged as a result of Defendants' actions described herein. On information and belief, Defendants' sale and distribution of the Counterfeit Goods have resulted in lost sales to JLI, have reduced the business and profits of JLI, and have greatly injured the general reputation of JLI, all to JLI's damage in an amount as yet to be determined during this Civil Action or to be considered in relation to a request for statutory damages.

56. On information and belief, Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount to be determined during this Civil Action or to be considered in relation to a request for statutory damages.

57. On information and belief, Defendants acted intentionally and/or willfully in using the JUUL Marks on the Counterfeit Goods, knowing that the JUUL Marks belonged to JLI, that the Counterfeit Goods were in fact counterfeit, and that Defendants were not authorized to use the JUUL Marks on the Counterfeit Goods.

58. Defendants' acts of violating 15 U.S.C.§1125(a), directly and/or in contributory or vicarious manner, have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. On information and belief, Defendants' actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public as to the source, sponsorship, and/or affiliation of Defendants and/or the Counterfeit Goods.

## COUNT 3

### Unfair Competition – Counterfeit Goods (15 U.S.C. §1125(a))

59. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 58 as though set forth fully herein.

60. An express purpose of the Lanham Act is to protect commercial parties against unfair competition.

61. Defendants' unauthorized use of JUUL Marks, brand names, and the other distinctive words, symbols, color schemes, and designs through which JLI presents its products to the market constitutes wrongful and unfair business practices and marketplace bad faith, resulting in false designations and inaccurate representations to the consuming public that the Counterfeit Goods sold by Defendants originated from or somehow are authorized by or affiliated with JLI. Defendants so acted for Defendants' own financial benefit in disregard to the harm being caused to JLI.

62. Defendants' actions as described herein constitute violation of 15 U.S.C. §1125(a)(1)(A), as such actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with JLI and/or as to the origin, sponsorship, and/or approval of the Counterfeit Goods by JLI. These acts amount to false designations to compete unfairly with JLI.

63. JLI has been damaged as a result of Defendants' actions described herein. On information and belief, Defendants' sales of the Counterfeit Goods have resulted in lost sales to JLI, have reduced the business and profits of JLI, and have greatly injured the general reputation and goodwill of JLI, all to JLI's damage in an amount to be determined during this Civil Action or to be considered in relation to a request for statutory damages.

64. On information and belief, Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of unfair competition, gains, profits, and advantages in an amount to be determined during this action or to be considered in relation to a request for

statutory damages.

65. On information and belief, Defendants acted intentionally and/or willfully in using the JUUL Marks on the Counterfeit Goods, knowing that the JUUL Marks belonged to JLI, that the Counterfeit Goods were in fact counterfeit, and that Defendants were not authorized to use the JUUL Marks on the Counterfeit Goods.

66. Defendant's acts of violating 15 U.S.C. §1125(a), directly and/or in contributory or vicarious manner, have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. On information and belief, Defendants' actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public as to the source, sponsorship, and/or affiliation of Defendants and/or the Counterfeit Goods.

### COUNT 4

### Trademark Infringement – Grey Market Goods (15 U.S.C. §1114)

67. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 66 as though set forth fully herein.

68. Defendants' actions to sell and distribute the Grey Market Goods in the United States are intended to cause, have caused, and are likely to continue to cause public confusion or mistake, or to deceive consumers, the public, and trade into believing that the Grey Market Goods are genuine and authorized JUUL Products in the United States.

69. The Grey Market Goods are non-genuine JUUL Products in the United States and the "first sale" doctrine does not foreclose Defendants' liability under this cause of action because the Grey Market Goods materially differ from genuine JUUL Products authorized for sale in the United States. Specifically, the labeling and packaging of the Grey Market Goods (i) state the products are only authorized for sale in particular countries outside the United States, (ii) are designed to comply with the regulations of the authorized foreign marketplaces, and (iii) are not in compliance with the regulations of the U.S. Food and Drug Administration.

70. The foregoing acts of Defendants constitute direct, contributory, and/or vicarious trademark infringement in violation of 15 U.S.C. §1114.

71. JLI has been damaged as a result of Defendants' infringement of JLI's Marks. On information and belief, Defendants' sale and distribution of the Grey Market Goods have resulted in economic loss to JLI, and have injured the general reputation of JLI, all to JLI's damage in an amount to be determined during this Civil Action.

72. On information and belief, Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount to be determined during this Civil Action.

73. On information and belief, Defendants acted intentionally and/or willfully in infringing upon the JUUL Marks through sale and distribution of the Grey Market Goods, knowing that JUUL Marks belonged to JLI, that the Grey Market Goods were in fact infringing, and that Defendants were not authorized to infringe upon the JUUL Marks through sale and distribution of the Grey Market Goods.

74. The acts of direct, contributory, and/or vicarious trademark infringement committed by Defendant have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. On information and belief, Defendant's actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public into believing that the Grey Market Goods are genuine or authorized JUUL Products.

## **COUNT 5**
### **Statutory Unfair Trade Practices – Conn. Gen. Stat. §42-110a *et seq***

75. JLI re-alleges and incorporates by this reference each and every allegation in paragraphs 1 through 74 as though set forth fully herein.

76. Defendants' actions of trademark infringement, false designations of origin, misrepresentation, and deception described herein constitute unfair competition and/or unfair trade practices in violation of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*. Defendants' actions described herein also offend public policy.

77. JLI has been damaged by Defendants' acts of unfair competition or unfair trade practices. On information and belief, Defendants' sale and distribution of the Counterfeit Goods and Grey Market Goods have resulted in economic loss to JLI and have injured JLI's general reputation and goodwill in the industry, all in an amount to be determined during this Civil Action.

78. Defendants' actions described herein have caused, and will continue to cause, JLI to suffer irreparable harm unless enjoined by this Court.

## COUNT 6

### Common Law Unfair Competition

79. JLI re-alleges and incorporates by this reference each allegation in paragraphs 1 through 78 as though set forth fully herein.

80. JLI and Defendants are competitors in the marketing and sale of ENDS and related products.

81. Defendants' actions of trademark infringement, false designation of origin, misrepresentation and deception in the sale of ENDS described herein constitute unfair competition in the marketing and sale of ENDS and related products under the common law.

82. JLI has been damaged by Defendants' acts of unfair competition. JLI alleges, on information and belief, that Defendants' sale and distribution of the Counterfeit Goods and the Grey Market Goods have resulted in economic loss to JLI, have injured the general reputation and goodwill of JLI, and caused JLI to suffer damage in an amount to be determined during this Civil Action.

83. Defendants' actions described herein have caused, and will continue to cause, JLI to suffer irreparable harm unless enjoined by this Court.

### REQUEST FOR RELIEF

WHEREFORE, JLI hereby respectfully requests the following relief against Defendants MOHAMMED OLABI, an individual, HIGH RIDGE FUEL AND MART LLC, a

Connecticut limited liability company, WILTON GAS LLC, a Connecticut limited liability company, STRATFORD GAS & MART, INC., a Connecticut corporation, STAMFORD PETROLEUM AND MART, LLC, a Connecticut limited liability company, and WOODBRIDGE GAS, LLC, a Connecticut limited liability company, as follows:

1. An award of Defendants' profits and JLI's damages for trademark infringement of the JUUL Marks under 15 U.S.C. §§ 1114 and 1117, trebled, in an amount to be proven at trial;

2. An award of Defendants' profits and JLI's damages for false designations of origin in the sale of Counterfeit and Grey Market Goods under 15 U.S.C. §1125(a), trebled, in an amount to be proven at trial;

3. An award of Defendants' profits and JLI's damages for unfair competition in the sale of Counterfeit and Grey Market Goods under 15 U.S.C. §1125(a), trebled, in an amount to be proven at trial;

4. In the alternative to Defendants' profits and JLI's damages for trademark infringement of JUUL Marks, an award of statutory damages pursuant to 15 U.S.C. §1117(c) of $2,000,000.00 for each of the counterfeited trademarks willfully utilized by Defendants;

5. An injunction by this Court prohibiting Defendants, and Defendants' respective agents, servants, employees, and representatives and all persons in active concert and participation with them, during the pendency of this action and permanently thereafter, from: engaging or continuing to engage in the infringing, unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising, sale, distribution, and/or other dealing in any non-genuine JUUL Products, including fake counterfeit products or unauthorized grey-market products; using without permission any mark or other intellectual property right of JLI; acting to infringe the JUUL Marks ; falsely designating the origin of any non-genuine JUUL Product; engaging in unfair competition with JLI; or acting in any other manner to derogate JLI's intellectual property rights;

6. An Order requiring that Defendants provide complete accountings and for equitable relief;

7. An Order that an asset freeze or constructive trust be imposed over all ill-gotten monies and profits in Defendants' possession;

8. Pursuant to 15 U.S.C. §1116, including upon ex parte application, an Order for the seizure of goods and counterfeit marks and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in trademark violations;

9. Pursuant to 15 U.S.C. §1118, an Order requiring that Defendants and all others acting under Defendants' authority, at their cost, be required to deliver up to JLI for destruction all products, accessories, labels, signs, prints, packages, wrappers, advertisements, and other material in their possession, custody, or control bearing any of the JUUL Marks;

10. To the extent not duplicated by the awards sought above, an award of actual damages for the unfair acts and practices of the Defendants, and in the Court's discretion punitive damages, pursuant Conn. Gen. Stat. §42-110g(a);

11. To the extent not duplicated by the awards above, an award of costs and Plaintiff's reasonable attorney's fees pursuant to Conn. Gen. Stat. §42-110g(d);

12. An award of Prejudgment Interest pursuant to 15 U.S.C. §1117(b); and

13. Such other and further relief as the Court may deem just and equitable.

                                              Respectfully submitted,

                                              JUUL LABS, INC.
                                              Plaintiff

August 21, 2020

(signature and identifications on following page)

/s/ JOHN C. LINDERMAN
JOHN C. LINDERMAN
ct04291
lind@ip-lawyers.com
GERALD L. DEPARDO
ct15134
depardo@ip-lawyers.com
MCCORMICK, PAULDING & HUBER PLLC
CityPlace II, 18th Flr
185 Asylum Street
Hartford, CT 06103-3410
Ph. 860 549-5290
Fax 860 527-0464

*To Be Admitted Pro Hace Vice*
RANDALL J. CLEMENT, Esq.
California State Bar No. 193443
randy@clementandholaw.com
CLEMENT AND HO, APLC
201 W. Whiting Avenue Fullerton,
California  92832
Telephone: (714) 882-5794
Facsimile:  (714) 882-5795